# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MONIQUE BROWN, on behalf of herself, individually, and on behalf of all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 1:16-cv-10667** |
| **v.** | ) ) | **Hon. Judge Charles P. Kocoras** |
| **HEALTH RESOURCE SOLUTIONS, INC., GLENN STEIGBIGEL, and ROBERT MIKULAK,** | ) ) ) ) | **Hon. Magistrate Maria Valdez** |
| **Defendants.** | ) ) | |

## JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT

**ATTORNEYS FOR PLAINTIFFS:**

James B. Zouras
Ryan F. Stephan
Teresa M. Becvar
STEPHAN ZOURAS, LLP
205 North Michigan Avenue
Suite 2560
Chicago, Illinois 60601
312.233.1550
lawyers@stephanzouras.com

**ATTORNEYS FOR DEFENDANTS:**

Craig T. Boggs
Veronica Couzo
PERKINS COIE LLP
131 South Dearborn Street
Suite 1700
Chicago, Illinois 60603-5559
312.324.8400

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

I.     FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

      A.     Procedural History ....................................................................................2

      B.     Discovery Completed...................................................................................3

      C.     Settlement Negotiations ..............................................................................4

II.     SUMMARY OF THE SETTLEMENT TERMS .................................................................4

      A.     The Settlement Amount ..............................................................................4

      B.     Eligible Class Members ..............................................................................5

      C.     Releases.......................................................................................................5

      D.     Allocation Formula .....................................................................................6

      E.     Service Payment to Named Plaintiff............................................................6

      F.     Attorneys' Fees and Litigation Costs..........................................................6

      G.     Settlement Administrator ............................................................................7

III.    CLASS ACTION SETTLEMENT PROCEDURE ............................................................7

IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ................10

      A.     The Court Should Provisionally Certify the Settlement Class Under Rule 23 and the FLSA........................................................................................12

      B.     The Settlement Is Fair, Reasonable, and Adequate ................................20

           1.     The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor)...............................22

           2.     Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second Factor). ..........................................................27

           3.     The Reaction of the Class Has Been Positive (Third Factor). ..................28

i

4.      Competent Counsel for Both Parties Endorse this Agreement (Fourth Factor). ........................................................................28

5.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor)..............................................29

C.      The Settlement Was the Result of Arm's Length Negotiations, Without Any Hint of Collusion.............................................................................30

V.      THE CLASS NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE.........................................................................................30

VI.      PRELIMINARY APPROVAL OF PLAINTIFFS' COUNSEL'S REASONABLE FEES AND COSTS IS APPROPRIATE..........................................................32

CONCLUSION.........................................................................................................................33

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)............................................. 10

*Amchem Prods., Inc.* v. *Windsor*,
    521 U.S. 591 (1997)................................................................................. 13, 16, 18, 20

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) ................................................................ 11, 22, 28, 30

*Barragan v. Evanger's Dog & Cat Food Co.*,
    259 F.R.D. 330 (N.D. Ill. 2009)............................................................................... 14

*Boeing Co. v. VanGemert*,
    444 U.S. 472 (1980)................................................................................................ 33

*Butler v. Am. Cable & Tel., LLC*,
    No. 09 Civ. 5336, 2011 WL 4729789 (N.D. Ill. Oct. 6, 2011)......................... 21, 22

*Campbell v. Advantage Sales & Mktg. LLC*,
    No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) ........................... 32

*Castillo v. Noodles & Co.*,
    No. 16-CV-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016)........................... 32

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996).................................................................................. 30

*Cook v. McCarron*,
    No. 92 Civ. 7042, 1997 WL 47448 (N.D. Ill. Jan. 30, 1997) ................................. 11

*Curtiss-Wright Corp. v. Helfand*,
    687 F.2d 171 (7th Cir. 1982) .................................................................................. 25

*De La Fuente v. Stokely-VanCamp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) .................................................................................. 15

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985) .................................................................................. 27

*Driver v. AppleIllinois*,
    265 F.R.D. 293 (N.D. Ill. 2010)............................................................................. 20

*EEOC v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ............................................................ 22, 23, 24

*Elwell v. Univ. Hosps. Home Care Servs.*,
276 F.3d 832 (6th Cir. 2002) ........................................................................ 23

*Equity Funding Corp. of America Sec. Litig.*,
603 F.2d 1353 (9th Cir. 1979) ...................................................................... 25

*Espenscheid v. DirectSat USA, LLC*,
705 F.3d 770 (7th Cir. 2013) ........................................................................ 13

*Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) ................................................................... 10, 11

*Florin v. Nationsbank of Ga., N.A.*,
24 F.3d 560 (7th Cir. 1994) .......................................................................... 32

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ................................................................... 12, 28

*Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*,
988 F. Supp. 1130 (N.D. Ill. 1997) ............................................................... 21

*Hurt v. Commerce Energy, Inc.*,
No. 12 Civ. 0758, 2014 WL 3735460 (N.D. Ohio July 28, 2014) ...................... 19

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 179 (2d Cir. 1987) .......................................................................... 24

*In re Aon Corp. Wage & Hour Employment Practices Litig.*,
No. 08 Civ. 5802, 2011 WL 248448 (N.D. Ill. Jan. 26, 2011) ........................... 24

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ............................................... 11, 16, 18, 28

*In re Cendant Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001) .......................................................................... 33

*In re Chocolate Confectionary Antitrust Litig.*,
289 F.R.D. 200 (M.D. Pa. 2012) ................................................................... 18

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
204 F.R.D. 330 (N.D. Ohio 2001) ................................................................. 12

*In re Prudential*,
    148 F.3d 283 (3d Cir. 1998)......................................................................... 33

*In re Traffic Exec. Ass'n-E. R.R.*,
    627 F.2d 631 (2d Cir. 1980)......................................................................... 12

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ............................................................... passim

*Kaufman v. American Express Travel Related Servs. Co., Inc.*,
    264 F.R.D. 438 (N.D. Ill. 2009)................................................................... 12

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
    Nos. 05 Civ. 5944, 07 Civ. 2439, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ................... 11

*Kurgan v. Chiro One Wellness Ctrs. LLC*,
    No. 10 Civ. 1899, 2014 WL 642092 (N.D. Ill. Feb. 19, 2014)................................. 14, 19, 20

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,
    No. 00 Civ. 5755, 2000 WL 1774091 (N.D. Ill. Dec. 1, 2000) ............................................. 17

*Lukas v. Advocate Health Care Network and Subsidiaries*,
    No. 14 Civ. 2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015)......................... 13, 15, 16, 19

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*,
    834 F.2d 677 (7th Cir. 1987) ...................................................................... 24

*Matter of Cont'l Ill. Secs. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...................................................................... 32

*Matter of Cont'l Ill. Secs. Litig.*,
    985 F.2d 867 (7th Cir. 1993) ...................................................................... 32

*McCue v. MB Financial, Inc.*,
    No. 15 Civ. 0988, 2015 WL 1020348 (N.D. Ill. Mar. 6, 2015) ............................................. 18

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009)........................................................... 18

*Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    762 F.2d 1093 (D.C. Cir. 1985)................................................................... 10

*Moreno v. Napolitano*,
    No. 11 Civ. 5452, 2014 WL 4911938 (N.D. Ill. Sept. 30, 2014)........................................... 16

*Muro v. Target Corp.*,
  580 F.3d 485 (7th Cir. 2009) ............................................................. 15

*O'Brien v. Encotech Const. Servs., Inc.*,
  183 F. Supp. 2d 1047 (N.D. Ill. 2002) ................................................ 21

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
  231 F.R.D. 280 (N.D. Ill. 2005) ......................................................... 15

*Patterson v. Stovall*,
  528 F.2d 108 (7th Cir. 1976) ....................................................... 10, 22

*Pickett v. Simos Insourcing Solutions, Corp.*,
  No. 17-cv-1013, 2017 WL 1433309 (N.D. Ill. April 18, 2017).............. 10

*Redman v. RadioShack Corp.*,
  763 F.3d 622 (7th Cir. 2014) ............................................................. 32

*Resurrection v. Shannon*,
  2013 IL App (1st) 111605 .................................................................... 2

*Retired Chicago Police Assoc. v. City of Chicago*,
  7 F.3d 584 (7th Cir. 1993) ................................................................. 16

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ............................................................. 27

*Rindfleisch v. Gentiva Health Servs., Inc.*,
  962 F. Supp. 2d 1310 (N.D. Ga. 2013) ............................................... 23

*Robles v. Corporate Receivables, Inc.*,
  220 F.R.D. 306 (N.D. Ill. 2004) ......................................................... 17

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ..................................................... 14, 15

*Rubenstein v. Republic Nat'l Life Ins. Co.*,
  74 F.R.D. 337 (N.D. Tex. 1976) ......................................................... 28

*Saltzman v. Pella Corp.*,
  257 F.R.D. 471 (N.D. Ill. 2009) ......................................................... 15

*Seiden v. Nicholson*,
  72 F.R.D. 201 (N.D. Ill. 1976) ........................................................... 27

*Smith v. Family Video Movie Club, Inc.*,
  311 F.R.D. 469 (N.D. Ill. 2015) ................................................... 13

*Smith, et al. v. Adventist Midwest Health*,
  No. 16-cv-7606, ECF No. 114 (N.D. Ill. Nov. 17, 2017) ...................................................... 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ...................................................... 20, 21

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*,
  No. 02 Civ. 1109, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004) ............................................. 32

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
  309 F.3d 978 (7th Cir. 2002) ...................................................... 10

*Urnikis-Negro v. Am. Family Prop. Servs.*,
  616 F.3d 665 (7th Cir. 2010) ...................................................... 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...................................................... 32

*West Virginia v. Chas. Pfizer & Co.*,
  314 F. Supp. 710 (S.D.N.Y. 1970) ...................................................... 23

*Wilkins v. Just Energy Group, Inc.*,
  No. 13 Civ. 5806, 2015 WL 1234738 (N.D. Ill. Mar. 13, 2015) ...................................................... 14, 17

*Zolkos v. Scriptfleet, Inc.*,
  No. 12 Civ. 8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ............................................. 13

## Statutes

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ................................................ passim

Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* .................................................... passim

## Rules

Fed. R. Civ. P. 23 ........................................................................ passim

Fed. R. Civ. P. 54 ........................................................................ 6

## Other Authorities

5 James Wm. Moore, Moore's Federal Practice (3d ed. 2001) .................................... 33

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002).................... passim

Manual for Complex Litigation (3d ed. 2000)...................................................................... 11, 12

## INTRODUCTION

Plaintiff Monique Brown ("Named Plaintiff"), individually and on behalf of a proposed class of 174 other employees (collectively "Plaintiffs" or "Class Members"), alleges that Defendants Health Resources Solutions, Inc. ("HRS") and its co-owners Glenn Steigbigel and Robert Mikulak (together with HRS, "Defendants") misclassified Plaintiffs as exempt from overtime pay and failed to compensate them for all hours worked in excess of 40 hours per work week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*. Plaintiffs and Defendants (the "Parties") have agreed to settle this hybrid Rule 23 class and FLSA collective action for the significant, maximum monetary relief of $900,000.00.

The Court should preliminarily approve the Parties' proposed settlement agreement because it is fair, reasonable, and adequate under the governing legal standards and provides reasonable monetary compensation to the Class Members. The Parties respectfully request the Court: (1) grant preliminary approval of the proposed Class and Collective Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit A, and plan of settlement administration therein; (2) approve the proposed Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Class Notice"), the Claim and Opt-In Form ("Claim Form") and the Election to Opt Out of Settlement and Class Action form ("Opt-Out Form"), attached to the Settlement Agreement as Group Exhibit B; (3) authorize mailing of the Class Notice in the manner set forth in the Settlement Agreement; (4) schedule a final approval hearing approximately 100 days after the date of preliminary approval; and, (5) enter the [Proposed] Order Certifying Class for Settlement Purposes Only, Granting Preliminary Approval of Class Action Settlement, and Granting Approval of FLSA Settlement ("Preliminary Approval Order"), attached as Exhibit B and filed contemporaneously

herewith.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  <u>Procedural History</u>

On November 16, 2016, Named Plaintiff Monique Brown filed the above-captioned class and collective action. (ECF No. 1.) Named Plaintiff alleged that she and other registered nurses, physical therapists, occupational therapists, and speech therapists (collectively, "Clinicians") who performed clinical visits at patients' homes were misclassified by HRS as exempt from the overtime requirements of the FLSA and IMWL. Plaintiff alleged that HRS's pay scheme, which compensated all Clinicians on a combined hourly basis for some work and "per visit" basis for other work, failed to meet the salary or fee basis tests under the FLSA and therefore failed to satisfy the requirements of the professional employee exemption.[1] As a result, Named Plaintiff alleged that Clinicians were deprived of overtime wages in violation of federal and state wage law.

Named Plaintiff sought to represent herself and similarly situated Clinicians as a collective action under the FLSA and a class action under the IMWL and Federal Rule of Civil Procedure 23. On December 21, 2016, Plaintiff moved for conditional certification under the FLSA and to authorize notice of the action to a collective of "[a]ll persons who worked as home health Clinicians for Defendants [during the relevant statute of limitations], and who were classified as exempt, were paid on a hybrid 'per visit' and hourly basis, and were not paid overtime compensation for time worked in excess of forty (40) hours in given workweeks[.]" (ECF No. 20 at 20.) Thereafter, in order to facilitate settlement discussions, the Parties stipulated to toll the statute of limitations for claims under the FLSA for all putative collective action members through

---

[1]  The overtime provisions of the IMWL parallel those of the FLSA, including the circumstances under which an employee is exempt from overtime requirements. *See, e.g.*, *Resurrection v. Shannon*, 2013 IL App (1st) 111605, at ¶ 23.

March 15, 2017, and filed subsequent tolling stipulations extending the tolling period through September 30, 2017. (ECF Nos. 27, 33, 36, 38, 41.) To date, without the benefit of court-ordered notice to the putative members of the collective action, eight (8) individuals have timely filed opt-in consent forms to join the FLSA collective action ("Opt-In Plaintiffs").

Defendants have denied and continue to deny any liability, wrongdoing, or violation of any law whatsoever associated with any of the facts or claims alleged in this lawsuit and make no concession or admission of wrongdoing or liability of any kind. Defendants maintained that all Clinicians were and always have been properly classified as exempt employees and that no overtime pay of any kind is owed to them. Defendants also disputed that a class or collective action was appropriate. Nonetheless, Defendants agreed to settle the claims asserted in this lawsuit on the terms and conditions set forth in the Settlement Agreement to avoid the burden and expense of continued litigation.

### B. Discovery Completed

Plaintiff has conducted extensive investigation and case analysis including: (a) interviews and other communications with Named Plaintiff and all eight of the Opt-In Plaintiffs, two of whom provided sworn testimony in support of Plaintiffs' motion for conditional certification (*see* ECF No. 20-3); (b) the voluminous production of electronically stored information ("ESI") in the form of over 500,000 lines of home visit data from the "Netsmart" electronic medical record software, in addition to supplemental data produced concurrently with the filing of the instant motion; (c) data analyses by Plaintiffs' undisclosed expert; (d) review of payroll records identifying, among other items, dates of employment and pay rates; and (e) the investigation by counsel regarding the applicable law as applied to the facts discovered regarding the alleged claims and defenses. Declaration of James B. Zouras ("Zouras Decl.") ¶ 6, attached as Exhibit C.

3

C.     **Settlement Negotiations**

On July 20, 2017, the Parties participated in a day-long mediation conducted by an experienced and well-respected private mediator, the Honorable Stuart Nudelman (Ret.). Zouras Decl. ¶ 7. With Judge Nudelman's assistance, the Parties reached an agreement on the settlement amount and the claims-made structure of the settlement. *Id.* Over the next eight weeks, the Parties negotiated the remaining terms of the settlement, which were memorialized in a Memorandum of Understanding and ultimately, in the formal Settlement Agreement executed in full on November 27, 2017. *Id.* This settlement provides for substantial monetary relief for 175 Class Members, inclusive of the Named Plaintiff and the eight Opt-In Plaintiffs. *Id.* ¶ 8. The Class is defined as all "individuals . . . employed by Health Resource Solutions, Inc. as Home Health Clinicians in Illinois during the period November 16, 2013 through November 1, 2017 (the "Class Period"), who were classified as exempt, were paid on a hybrid "per visit" and hourly basis, [and who] were not paid overtime compensation for time worked in excess of forty (40) hours in given workweeks" (the "Settlement Class"). Settlement Agreement ¶ 7.

II.     **SUMMARY OF THE SETTLEMENT TERMS**

The terms of this settlement are contained in the Settlement Agreement. There are no undisclosed side agreements between the Named Plaintiff and Defendants. Zouras Decl. ¶ 9.

A.     **The Settlement Amount**

To avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties agreed to a Maximum Settlement Amount of $900,000.00. Settlement Agreement ¶ 25. The Maximum Settlement Amount covers: (1) all approved attorneys' fees and costs in connection with Plaintiffs' counsel's representation of Named Plaintiff and the Class Members, including all attorneys' fees and costs that may arise in the future in connection

with the Settlement Agreement, including, without limitation, seeking Court approval of the Settlement Agreement and managing the notice process; (2) all administrative fees incurred by the Settlement Administrator; (3) all payments to the Class Members who timely submit a Claim and Opt-In Form[2] and who do not validly and timely request exclusion from the settlement ("Settlement Claimants"), the Named Plaintiff, and the Opt-In Plaintiffs; and (4) a service payment to the Named Plaintiff ("Service Payment"). *Id.* Any unclaimed funds, either from Class Members who do not submit a Claim and Opt-In Form or from uncashed checks, will remain with or revert to HRS. *Id.* ¶¶ 37, 43, 44(f).

### B. Eligible Class Members

Class Members eligible to receive a settlement payment are all individuals employed by HRS as Home Health Clinicians in Illinois during the period November 16, 2013 through November 1, 2017, who were classified as exempt, were paid on a hybrid "per visit" and hourly basis, and who were not paid overtime compensation for time worked in excess of forty (40) hours in given workweeks. Settlement Agreement ¶ 7.

### C. Releases

The Settlement Agreement provides that the Class Members who timely submit Claim and Opt-In Forms will release both their state and local wage and hour claims and consent to join (*i.e.*, opt into) the FLSA collective action and thereby release their federal wage and hour claims. Settlement Agreement. ¶ 40. The Class Members who do not request exclusion from the settlement and who also do not timely submit a Claim and Opt-In Form will release their state and local law wage and hour claims and offset any damages that could be recovered pursuant to claims under the FLSA. *Id.* ¶¶ 40-41.

---

[2] The Named Plaintiff and eight Opt-In Plaintiffs need not submit a claim form to receive their funds. Settlement Agreement ¶ 37.

### D.     Allocation Formula

The distribution of the $578,500.00 in available settlement funds designated for Class Members is based on employee payroll and productivity data from the Netsmart electronic medical record software utilized by HRS. Settlement Agreement ¶ 5. The settlement funds are allocated to each Class Member on a pro rata basis based on the estimated number of overtime hours worked (i.e., in excess of 40 hours per workweek) during the Class Period, in addition to liquidated damages under the FLSA and damages of 2% per month under the IMWL. *Id.* ¶ 38. The allocation method provides compensation for over 10,000 workweeks for 175 Class Members (including the Named Plaintiff) during a class period spanning nearly four years and results in an average settlement distribution of approximately $3,300.00 per Class Member, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and the service payment. Zouras Decl. ¶ 12. Class Members whose data show no work weeks with more than 40 hours during the Class Period will be allocated a minimum payment of $250.00. Settlement Agreement ¶ 38.

### E.     Service Payment to Named Plaintiff

Plaintiffs will apply for Court approval, and Defendants will not oppose, distribution of a Service Payment to the Named Plaintiff, paid out of the Maximum Settlement Amount, that does not exceed $7,500.00. Settlement Agreement ¶ 42.

### F.     Attorneys' Fees and Litigation Costs

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), along with their Motion for Final Approval of the Settlement, Plaintiffs' counsel will petition for Court approval of an award of attorneys' fees and costs. Plaintiffs' counsel will seek, and Defendants will not oppose, an award of attorneys' fees and costs of $33^{1}/_{3}$% of the Maximum Settlement Amount (or $300,000.00), and an additional amount as reimbursement for settlement administration expenses

to be determined, but estimated to be $14,000.00. Settlement Agreement ¶¶ 42, 63. The Parties agree that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Plaintiffs' counsel, their hourly rates, the risks undertaken, and the results achieved.

### G. **Settlement Administrator**

The Parties have agreed to retain Dahl Administration ("Dahl") as the Settlement Administrator. Settlement Agreement ¶ 32. The Settlement Administrator's fees for administration and distribution of the settlement award will be paid from the Maximum Settlement Amount as set forth above. *Id.* ¶ 42.

## III. CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (*"Newberg"*), § 11.22 *et seq.* (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests. With this motion, the Parties request that the Court take the first step—granting preliminary approval of the Settlement Agreement, approving the proposed Class Notice and ordering its distribution.

The Parties respectfully propose that the Court issue a Preliminary Approval Order, which initiates the following schedule:

1. Within seven (7) days after the Court issues a Preliminary Approval Order, Defendants shall provide Plaintiffs' counsel and the Settlement Administrator, for each Class Member, their: 1) name; 2) last known home address; 3) Social Security number; and 4) last known telephone number (the "Class List"). Plaintiffs' counsel will provide to the Settlement Administrator and the Defendants the settlement payment allocation for each Class Member. Settlement Agreement ¶ 52.

2. Within ten (10) calendar days after receiving the Class List and settlement payment allocations for the Class Members, the Settlement Administrator shall send the Notice of Settlement ("Class Notice"), Claim and Opt-In Form, and Opt-Out Form (collectively, "Notice Materials") to the Class Members. *Id.* ¶ 53. The Class Notice describes the nature of the litigation, the terms of the settlement, as well as the Class Members' options with regard to participating in the proposed settlement, objecting to the settlement, or opting out. *See* Settlement Agreement, Group Ex. B (Notice Materials). The Notice Materials will be sent, postage pre-paid, via first class mail to the last-known address of each Class Member. *Id.* If any such mailing is returned as undeliverable with an indication of a more current address, the Settlement Administrator will mail the Notice Materials to the new address. *Id.* If any such mailing is returned as undeliverable without any indication of a more current address, the Settlement Administrator will undertake reasonable efforts to identify a current address and, if one is so identified, will mail the Notice Materials to the new address. *Id.*

3. To receive a settlement payment, all Class Members, with the exception of the Named Plaintiff and Opt-In Plaintiffs, must execute a Claim and Opt-In Form and submit it to the Settlement Administrator. *Id.* ¶¶ 37, 55. To be deemed timely, a Claim and Opt-In Form, an Opt-Out Form, or objection must be postmarked by no later than sixty (60) calendar days from the date the Notice Materials are mailed. *Id.* ¶¶ 37, 55, 56, 59.

4. A final approval hearing on the fairness and adequacy of the proposed settlement, Plaintiffs' counsel's request for attorneys' fees and costs, settlement administration expenses, and the service payment to the Named Plaintiff will be held after the Court preliminarily approves the settlement, on a date subject to the Court's determination approximately one hundred (100) days after the date of preliminary approval. *Id.* ¶ 50. The Class Notice will advise Class Members of the Final Approval Hearing and their right to object to the settlement. *See* Settlement Agreement, Group Ex. B (Notice Materials).

5. No later than seven (7) days before the Final Approval Hearing, the Parties will file a joint motion for final approval of settlement, and Plaintiffs' counsel will file a motion seeking approval of the agreed-upon award of attorneys' fees and costs relating to their representation of the Named Plaintiff, Opt-In Plaintiffs and Class Members. Settlement Agreement ¶¶ 50, 62, 63.

6. After the Final Approval Hearing, if the Court grants the Parties' motion for final

approval of the settlement, the Court will issue a Final Approval Order and Final Judgment. *Id.* ¶¶ 22-23. The "Effective Date" of the settlement will be the first business day after the Court enters final approval of the Settlement Agreement, if no objections by any of the Class Members have been filed, or if filed have been withdrawn. *Id.* ¶ 20.

7.     No later than seven (7) days after the Effective Date, Defendants shall deposit the amount of funds claimed by the Settlement Claimants, plus all Court-approved attorneys' fees and costs, Settlement Administrator expenses, the Service Payment to the Named Plaintiff, and the employer portion of payroll taxes into the Qualified Settlement Fund opened and administered by the Settlement Administrator. *Id.* ¶¶ 30, 43.

8.     The Settlement Administrator will disburse the settlement checks to the Settlement Claimants and Named Plaintiff[3] and will pay attorneys' fees and costs to Plaintiffs' counsel within twenty-one (21) business days after the Effective Date. *Id.* ¶ 44.

Once this Court has ruled on the motion for preliminary approval, the deadlines for providing notice, and thereafter submitting a claim form, opting out of the settlement, and submitting objections to the proposed settlement, will begin to run. The schedule set forth below, which is subject to the timing of actions to be taken by the Parties and the Court in this case, provides the Court with an approximate timeline of the various steps in the settlement approval process under the Settlement.

|    | *Event* | *Timing* |
|----|---------|----------|
| 1. | Defendants to Provide Class List and Plaintiffs' Counsel to Provide Settlement Allocation to Settlement Administrator | Within 7 Days After Entry of Preliminary Approval Order |
| 2. | Settlement Administrator to Issue Class Notice | Within 10 Days After Receiving Class List |
| 3. | Deadline for Submitting a Claim and Opt-In Form, Opting Out, or Objecting to Settlement | 60 Days After the Issuance of Class Notice |
| 4. | Final Approval Hearing | Approximately 100 Days After Preliminary Approval |
| 5. | Effective Date | The First Business Day After the Court Enters Final Approval of the Settlement Agreement, If No Objection By Any Class Member Has Been Filed, or If Filed Has Been Withdrawn |
| 6. | Defendants to Fund the Settlement | Within 7 Days After Effective Date |
| 7. | Settlement Administrator to Distribute Funds to Settlement Claimants, Named Plaintiff, and | Within 21 Days After Effective Date |

---

[3]     Named Plaintiff's checks, along with those of the Opt-In Plaintiffs, shall be sent to their counsel, Stephan Zouras, LLP, for distribution. Settlement Agreement ¶ 44(c).

| | Plaintiffs' Counsel | |
| --- | --- | --- |

## IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal citations omitted); *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) ("Federal courts favor settlement, so the district court's inquiry into the settlement structure is limited to whether the settlement is lawful, fair, reasonable and adequate.") (citing *Isby*, 75 F.3d at 1198-99); *Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching. *Id.* A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (internal citation and quotation marks omitted).

The dismissal or compromise of any class action requires the Court's approval. Fed. R. Civ. P. 23(e). The decision to approve a proposed settlement is committed to the Court's sound discretion. *See, e.g.*, *Pickett v. Simos Insourcing Solutions, Corp.*, No. 17-cv-1013, 2017 WL 1433309, at *1 (N.D. Ill. April 18, 2017); *Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"). The approval of any proposed class action settlement is typically exercised in the two-

step process of "preliminary" and "final" approval. Manual for Complex Litigation § 30.41 (3d ed. 2000). Although the legal standards for preliminary and final approval overlap, preliminary approval requires only a threshold finding that the settlement could be approved as fair and adequate after notice to the class.

At the preliminary approval stage, the Court's task is to "determine whether the proposed settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (internal citation and quotation marks omitted) (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate"), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (citations omitted). "The purpose of the initial hearing is to ascertain whether there is any reason to notify the class members of the proposed settlement and proceed with a fairness hearing." *Cook v. McCarron*, No. 92 Civ. 7042, 1997 WL 47448, at *7 (N.D. Ill. Jan. 30, 1997) (citing *Armstrong*, 616 F.2d at 314). Once the settlement is found to be "within the range of possible approval" at the initial fairness hearing, the final approval hearing is scheduled and notice is provided to the class. *Id.*

Courts in this district perform a "summary version" of the final fairness inquiry at the preliminary approval stage. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, Nos. 05 Civ. 5944, 07 Civ. 2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007)). In considering whether to grant preliminary approval of a proposed settlement agreement, the Court

utilizes a "threshold inquiry" intended merely to realize conspicuous defects. *See In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 337-38 (N.D. Ohio 2001). Thus, preliminary approval is appropriate:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval . . . .

Manual for Complex Litigation § 30.41 (3d ed. 2000). Unless the Court's initial examination "discloses[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to class members under Rule 23(e). *Id.*; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (a court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness") (internal quotation omitted). After preliminary approval, the second step of the approval process is the final determination, following a hearing at which time any objections by class members may be considered. The Court then determines whether the settlement is fair, reasonable and adequate from the standpoint of the class. *Newberg* § 11.41.

## A.    The Court Should Provisionally Certify the Settlement Class Under Rule 23 and the FLSA.

"Before addressing the substantive provisions of the Settlement Agreement, the Court must first determine whether the proposed class can be certified" for settlement purposes. *Kaufman v. American Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 441-42 (N.D. Ill. 2009) (citation omitted). Class certification is an exercise of judicial discretion, and "[t]he fact that the parties have reached a settlement is a relevant consideration in the class-certification analysis." *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *1 (N.D. Ill. Dec.

12, 2014) (citing *Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004)); *see also Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 620 (1997) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

The Parties have stipulated to Rule 23 certification and final certification under FLSA § 216(b) and request that the Court certify the Settlement Class defined above for settlement purposes only. When presented with a request to preliminarily approve a proposed class settlement, a court's evaluation may be more relaxed than when considering entry of a final order binding all class members to the settlement's terms. Nevertheless, the Court must still determine whether the proposed Settlement Class satisfies the requirements of Rule 23 and the FLSA. As demonstrated below, no reason exists to refrain from provisionally certifying, for settlement purposes, the proposed Settlement Class. Further, because the standards for final FLSA certification and Rule 23 class certification are similar, the analysis set out below supports both class and collective treatment of Plaintiffs' claims for settlement purposes. *See Smith v. Family Video Movie Club, Inc.*, 311 F.R.D. 469, 474 (N.D. Ill. 2015) ("the standards for certification under Rule 23 and the FLSA (final certification rather than conditional) have 'largely merged'"), *quoting Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). Indeed, this Court has granted *contested* motions for Rule 23 and final FLSA certification in class actions prosecuted by Plaintiffs' counsel involving virtually indistinguishable claims, legal theories and facts. *See Lukas v. Advocate Health Care Network and Subsidiaries*, No. 14 Civ. 2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015) (Guzman, J.); *also Smith, et al. v. Adventist Midwest Health*, No. 16-cv-7606, ECF No. 114 (N.D. Ill. Nov.

17, 2017) (Gilbert, J.).

Rule 23(a)(1). The first requirement asks whether the proposed class is so numerous that joinder is impracticable. Although the rule provides no firm number, courts have held that numerosity can be satisfied where more than 40 putative class members exist. *See, e.g.*, *Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10 Civ. 1899, 2014 WL 642092, at *5 (N.D. Ill. Feb. 19, 2014). Here, 175 employees comprise the putative Rule 23 class. Accordingly, Rule 23(a)(1)'s numerosity requirement is met.

Rule 23(a)(2). The next question is whether there are questions of law or fact common to the class. "Commonality requires that there be at least one question of law or fact common to the class." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A common question may be shown where claims of individual members are based on the common application of a statute or where class members are aggrieved by the same or similar conduct. *Kurgan,* 2014 WL 642092 at *6. At least two common issues exist in this case that support certification for settlement purposes, as all of the proposed class members were subjected to the same allegedly unlawful pay practices of HRS in: (1) classifying Clinicians as exempt from the overtime requirements of the FLSA and IMWL under its hybrid "per-visit" and hourly pay scheme; and (2) failing to make or maintain records of all time worked by Clinicians. Indeed, the legality of HRS's uniform pay policy is the focus of the litigation. *Wilkins v. Just Energy Group, Inc.*, No. 13 Civ. 5806, 2015 WL 1234738, at *11 (N.D. Ill. Mar. 13, 2015) (commonality existed where employer uniformly treated its workers as outside the scope of the IMWL based on its position that the workers fell within the outside salesperson exemption). "There can be little doubt that a common issue is present in this case—namely, the question of whether a mixed per-visit and per-hour

14

pay arrangement allows [a defendant] to lawfully classify Clinicians as exempt under the FLSA." *Lukas*, 2015 WL 5006019 at *5. Therefore, Plaintiffs satisfy the commonality requirement for the Settlement Class.

Rule 23(a)(3). A "'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the same legal theory.'" *Rosario*, 963 F. 2d at 1018 (quoting *De La Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Rule 23(a)'s typicality requirement should be "liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009). So long as "the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," typicality is satisfied. *Id.* (citation omitted); *see also Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). Rule 23(a)(3) "'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente,* 713 F.2d at 232).

Named Plaintiff's claims are typical of the claims of other class members because they arise from the same course of action by HRS which applies to all Clinicians: the alleged failure to pay overtime because of a challenged classification as exempt. *See Lukas*, 2015 WL 5006019 at *4 (typicality met where "[t]he practice or course of conduct Plaintiffs complain of is [defendant]'s policy of classifying Clinicians as exempt yet paying them with a combination of fee-based and hourly rates"). While there may be factual differences between claims of the Named Plaintiff and those of other putative class members, their claims are nevertheless based

on the same legal theory. *Moreno v. Napolitano*, No. 11 Civ. 5452, 2014 WL 4911938, at *9 (N.D. Ill. Sept. 30, 2014) ("[S]imilarity of legal theory may control even in the face of differences of fact") (internal quotations omitted). Thus, as stated by this Court in *Lukas*, the claims of the class representative "are clearly typical of those of the claims of other class members." *Lukas*, 2015 WL 5006019 at *4.

Rule 23(a)(4). The requirement that "the representative parties . . . fairly and adequately protect the interests of the class . . . serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. This requirement "tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining . . . whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626 n.20. Because of the unique nature of the class action device, "[t]he adequacy-of-representation requirement 'is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members.'" *In re AT&T Mobility Wireless Data Servs.*, 270 F.R.D. at 343 (quoting *Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)) (further internal quotations and citation omitted).

"A class representative must . . . be part of the class and possess the same interest and suffer the same injury as the class members." *In re AT&T Mobility Wireless Servs.*, 270 F.R.D. at 343 (internal quotations and citation omitted). "This requires the district court to ensure that there is no inconsistency between the named parties and the class[,] . . . [because a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id.* (internal quotations and citations omitted).

The proposed class representative, Monique Brown, worked as a Clinician for HRS during the class period, and her claims are based on the same allegedly unlawful pay scheme as the rest of the proposed class. She has shown her commitment to vigorously prosecuting litigation by assisting Plaintiffs' counsel in preparing the Complaint and Plaintiffs' motion for conditional certification under the FLSA, and actively participating in mediation and settlement negotiations. The proposed class representative has also provided invaluable information, documents and declaration testimony, and otherwise assisted Plaintiffs' counsel in understanding Plaintiffs' claims and Defendant's defenses. *Wilkins*, 2015 WL 1234738 at *12 (adequacy of representation satisfied where Plaintiff demonstrated she was sufficiently interested in the outcome of the case because she sat for her deposition and responded to written discovery). This qualifies Named Plaintiff as a "conscientious representative plaintiff" and satisfies the adequacy of representation requirement. *Robles v. Corporate Receivables, Inc.*, 220 F.R.D. 306, 314 (N.D. Ill. 2004).

The class representative does not have any interests antagonistic to the class. Rather, she has the same interests and has suffered the same damages for unpaid overtime as the proposed class members. *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 Civ. 5755, 2000 WL 1774091, at *5-6 (N.D. Ill. Dec. 1, 2000) (no antagonistic interest where plaintiff alleged same violation and remedy as the rest of the class).

Likewise, Plaintiffs' counsel have fairly and adequately protected the interests of the class. Plaintiffs' attorneys are highly experienced and have successfully acted as representative counsel in numerous wage and hour class actions, as well as other complex class actions, in federal and state courts in the Northern District of Illinois and throughout the United States, including several successfully resolved and active class actions on behalf of other groups of clinicians with virtually identical claims. *See* Zouras Decl., Attachment A (Stephan Zouras, LLP

17

Firm Resume). "Plaintiffs' [C]ounsel have invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement." *In re AT&T Mobility Data Servs.*, 270 F.R.D. at 344 (citation omitted).

Plaintiffs' counsel invested considerable time and resources, consulted with an expert, and reviewed and analyzed data and other confidential documents provided by Defendants before the settlement was reached. Indeed, this exchange of information, the use of a mediator, and Plaintiffs' independent investigation, as well as arm's-length negotiations with Defendants, demonstrate Plaintiffs' counsel's pursuit of the interests of the class and their determination to avoid even an appearance of collusion with Defendants. *See McCue* v. *MB Financial, Inc.*, No. 15 Civ. 0988, 2015 WL 1020348, at *2 (N.D. Ill. Mar. 6, 2015) (citing *McKinnie* v. *JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009)). In short, Named Plaintiff and her counsel have demonstrated that they "are fully capable of litigating this case." *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. 2012). Accordingly, the adequacy requirement is satisfied.

Rule 23(b)(3). Once Rule 23(a) is satisfied, Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620.

Here, there are numerous common questions of law and fact that predominate over any questions that may affect individual Class Members so as to render a class settlement appropriate.

As explained above, Plaintiffs were uniformly subject to a pay scheme that allegedly compensated them on an hourly basis for some work and on a per-visit basis for other work. The question of the legality of this pay scheme and of the right of Plaintiffs to any unpaid overtime can, for provisional certification purposes, be determined for the entire class in a single adjudication, without considering individualized issues. *See Lukas*, 2015 WL 5006019 at *6 ("Whether a hybrid pay system renders an employee ineligible for exemption from the FLSA overtime provisions is therefore not only a common issue underlying the claims of all class members, but in many ways a dispositive one."); *Hurt v. Commerce Energy, Inc.*, No. 12 Civ. 0758, 2014 WL 3735460, at *2-3 (N.D. Ohio July 28, 2014) ("Here, the issue is not the minor individual differences between the [members of the class], but rather the Defendants' uniform treatment of [them] as exempt . . . – both liability and defenses to liability will be appropriately made on a classwide basis."); *Kurgan*, 2014 WL 642092 at *9 ("Where, as here, the focus is on the liability-imposing conduct of the defendant that is identical for all putative plaintiffs, the predominance element is satisfied."). Accordingly, the predominance prong of Rule 23(b)(3) is satisfied for purposes of settlement class provisional certification.

Rule 23(b)(3) lists four factors that the Court should consider in taking into account whether a class action is superior to other methods of adjudicating this action: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23 (b)(3)(A)-(D).

An assessment of the Rule 23(b)(3) "superiority" factors shows that a class action is the

preferred procedure in this case. The superiority requirement is satisfied when "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Driver v. AppleIllinois*, 265 F.R.D. 293, 304 (N.D. Ill. 2010) (quoting *Amchem*, 521 U.S. at 615).

The Settlement Agreement provides Class Members with the ability to obtain prompt, predictable, and certain relief, and it contains well-defined administrative procedures to ensure due process. This includes the right of Class Members who may be dissatisfied with the settlement to object or exclude themselves from it. Judicial economy and efficiency, as well as consistency of judgments, would be achieved through the certification of the class. *See Kurgan*, 2014 WL 642092 at *9. The settlement relieves the substantial judicial burdens that would be caused by repeated adjudication of the same issues in multiple individualized trials against Defendants by going forward with this case as a class action. And because the Parties seek to resolve this case through a settlement, any difficulties of managing a class action are vitiated by the facts of this settlement. In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, the requirements of the FLSA § 216(b) are also satisfied, and thus Rule 23 certification and final certification under FLSA of the proposed Settlement Class for purposes of settlement is appropriate.

> **B.**     <u>**The Settlement Is Fair, Reasonable and Adequate.**</u>

A court generally will preliminarily approve a proposed class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id*. at

§ 11.26, it is useful to consider the criteria on which the Court will ultimately judge the settlement.

In making these determinations, courts consider five factors: (1) the strength of the plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.3d at 1199. A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997). All of these factors weigh in favor of approval of the Settlement Agreement and preliminary approval.

Additionally, courts have construed the FLSA as requiring approval of a settlement that would release FLSA claims. When a court evaluates an FLSA settlement, its review "requires a similar assessment. Specifically, the Court must determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) (citations omitted). Similarly, this Court has held that a court must determine whether a settlement of claims under the IMWL is a fair and reasonable resolution of a bona fide dispute under the IMWL. *See, e.g., O'Brien v. Encotech Const. Servs., Inc.*, 183 F. Supp. 2d 1047, 1050 (N.D. Ill. 2002) (holding that a release of IMWL claims, like claims under the FLSA, must be supervised by a Court or the Department of Labor). When supervising a settlement of wage and hour claims, courts often consider many of the same factors considered under Rule 23, including the complexity, expense, and likely duration of the litigation, the reaction of the class to the settlement, the stage of the

21

proceeding and the amount of discovery completed, and the reasonableness of the settlement range in light of the risks of establishing liability, damages, and maintaining the class action through the trial. *Butler*, 2011 WL 4729789 at *9 n.9 (citations omitted).

### 1. The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (First Factor).

HRS has agreed to settle this case for a maximum of $900,000.00 for a class of 175 Clinicians. Settlement Agreement ¶ 25; Zouras Decl. ¶ 12. The settlement amount, therefore, represents significant value for these Class Members—an average sum of approximately $3,300.00 per individual, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and the service payment—particularly given the attendant risks of litigating the merits of the case through Rule 23 class certification and FLSA decertification, summary judgment proceedings and/or trial, and any appeals of decisions on those matters. Zouras Decl. ¶ 12.

In evaluating the strength of the plaintiffs' case on the merits as compared to the amount of the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Patterson*, 528 F.2d at 114 (collecting cases). Courts "have been admonished to refrain from resolving the merits of the controversy of making a precise determination of the parties' respective legal rights." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). Because "[t]he essence of settlement is compromise," *Id.*, courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200; *see also Armstrong*, 616 F.2d at 315 (noting that "the essence of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes"). Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory … Thus, the parties

to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations and emphasis omitted).

The outcome of this litigation is far from certain. On liability, Plaintiffs would have to overcome Defendants' defense that Plaintiffs were exempt professional employees under the FLSA and IMWL by showing that Defendants uniformly compensate Clinicians on a combined "per visit" and hourly basis that fails to meet the salary or fee basis tests under the FLSA. Few courts have addressed this precise issue, and the ones that have are non-precedential in this district. *See Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310, 1323 (N.D. Ga. 2013) (granting partial summary judgment for collective class of home care clinicians on the grounds that their non-visit fees were improperly based on the amount of time it takes to complete a non-visit activity, *i.e.*, on an hourly basis); *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 838-39 (6th Cir. 2002) (a compensation plan that combines fee payments and hourly pay does not qualify as a fee basis because it ties compensation, at least in part, to the number of hours or days worked and not on the accomplishment of a given single task). Thus, as in any complex action, the Plaintiffs generally face uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

In addition, a trial on the merits would involve significant risks for Plaintiffs as to damages. Bona fide disputes exist as to whether Named Plaintiff and the Class Members could credibly establish the hours of overtime they worked, if any, and the weeks in which they worked overtime. Further, Plaintiffs would have to overcome arguments that the fluctuating workweek method of calculating overtime premiums (FWW), which results an overtime multiplier of .5 times (rather

than 1.5 times) the regular hourly rate, should apply. *See Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681 (7th Cir. 2010); *In re Aon Corp. Wage & Hour Employment Practices Litig.*, No. 08 Civ. 5802, 2011 WL 248448, at *3 (N.D. Ill. Jan. 26, 2011) (holding that the FWW method of calculating overtime premiums for salaried employees using a half-time rate applied to the plaintiffs' misclassification claims).

Here, the settlement provides far more than "a fraction of the potential recovery." Depending on whether the FWW method of calculating overtime is applied, which remains an undecided question, Plaintiffs' counsel estimate that the settlement amount distributed directly to the Class Members represents as much as nearly 90% of the Settlement Class's likely maximum potential claim for overtime wages, exclusive of liquidated damages under the FLSA and damages of 2% per month under the IMWL. Zouras Decl. ¶ 13. Though not providing the maximum possible value that conceivably might be awarded later at trial, assuming Plaintiffs achieved final FLSA and Rule 23 class certification and overcame Defendants' anticipated summary judgment motion, the settlement provides substantial monetary benefits now, without the time, difficulties, expense, and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

"District courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987) (internal quotes and citation omitted). The allocation of a settlement fund among competing claimants is one of the court's traditional

equitable functions. *Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982). In exercising its equitable power, a court has the discretion to favor those class members who have relatively stronger legal claims. *See Equity Funding Corp. of America Sec. Litig.*, 603 F.2d 1353, 1366-67 (9th Cir. 1979) (upholding a plan of allocation in which those class members with stronger claims received more than those with weaker claims).

In determining the allocation method, the Parties considered, among other things, payroll data specific for each Class Member and the employee productivity data produced from Netsmart—the software HRS uses for documenting patient visits—as well as the possibility for liquidated damages under the FLSA and damages of 2% per month under the IMWL. Zouras Decl. ¶ 10. To determine an equitable distribution among competing claimants, the allocation formula accounts for Clinicians' flexible home visit schedules, which meant that they did not work the same amount of overtime every week, including certain weeks when they did not work any overtime at all. *Id.* ¶ 11. Specifically, the formula assigns a productivity point value to each type of visit recorded in the Netsmart data, with each productivity point representing 1.6 hours of work, including the time spent performing the visit as well as time spent on travel and work outside of the visit. *Id.* The formula then multiplies the number of productivity points accumulated by each Clinician each workweek by 1.6 to estimate the hours worked over 40 during all workweeks in the class period. *Id*. Finally, the settlement funds are allocated to each Class Member on a pro rata basis based on the estimated number of overtime hours worked (i.e., in excess of 40 hours per workweek) during the Class Period, in addition to liquidated damages under the FLSA and damages of 2% per month under the IMWL. Settlement Agreement ¶ 38. Any Class Member whose data reflect no work weeks with hours more than 40 during the Class Period under the allocation formula will receive a minimum payment of $250.00. *Id.*

The resulting distribution provides compensation for over 10,000 weeks worked during the Class Period. Zouras Decl. ¶ 12. Plaintiffs' counsel's investigation, including Named Plaintiff's and the Opt-In Plaintiffs' declaration testimony and data analysis, concluded that Class Members routinely worked in excess of 40 hours during their regular workweek. Depending on whether the FWW method of calculating overtime is applied, which remains an undecided question, Plaintiffs' counsel estimate that the settlement amount distributed directly to the Class Members represents as much as nearly 90% of the Settlement Class's likely maximum potential claim for overtime wages, exclusive of liquidated damages under the FLSA and damages of 2% per month under the IMWL. Zouras Decl. ¶ 13.[4]

Under the proposed settlement, any unclaimed funds will revert to Defendants. Settlement Agreement ¶ 37. A claims-made settlement with a reversion is advisable in this case for two key reasons. First, notice under Section 216(b) of the FLSA has not yet issued, and requiring Class Members to submit a claim to participate in the settlement ensures satisfaction of the opt-in requirement of an FLSA collective action. *See* 29 U.S.C. § 216(b). The Claim and Opt-In Form's language reflects this: "I consent to join and opt-into the FLSA collective action in this lawsuit[.]" Settlement Agreement, Group Ex. B (Notice Materials). Second, the use of a reversion allows the Parties to secure a potentially more favorable settlement for the class than a nonreversionary settlement. The settlement was reached as a result of a full day of intense negotiation with the assistance of a well-established and well-respected mediator, Hon. Stuart Nudelman (Ret.), and considerable post-mediation negotiations to finalize an agreement. These negotiations included Defendants' production of information concerning their current financial status and viability.

---

[4] By contrast, Defendants assert that the settlement actually represents more than any damages attainable at trial, which further supports the adequacy and reasonableness of the settlement.

Zouras Decl. ¶ 7. Had Plaintiffs insisted on a purely nonreversionary settlement, Defendants would not have agreed to pay $900,000.00, if the Parties reached a settlement at all. A smaller, yet nonreversionary settlement would have guaranteed that each Class Member received a payment, but would also mean the individual payments would be less for each Class Member. Thus, the proposed settlement enhances the possibility of greater recovery by Class Members who consent to participate.

The proposed settlement thus ensures that the Class Members who affirmatively wish to participate in the settlement will receive significant monetary relief. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable. This factor therefore weighs in favor of preliminary approval.

### 2. Litigation Through Trial and Appeals Would Be Complex, Costly, and Long (Second Factor).

By reaching a favorable settlement prior to full discovery practice, certification proceedings, dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Plaintiffs' counsel believes Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and

effort.").

Here, further litigation would certainly result in dozens of depositions, fully briefed motions for Rule 23 class and FLSA certification, decertification proceedings, and summary judgment practice on liability, and would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. The proposed settlement, on the other hand, provides immediate benefits.

Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976). This factor therefore weighs in favor of preliminary approval.

### 3. The Reaction of the Class Has Been Positive (Third Factor).

Because the Parties have not yet sent the Class Notice, it is premature to fully assess this factor. *In re AT&T Mobility Wireless Data Servs.*, 270 F.R.D. at 349. However, the Named Plaintiff supports the settlement, as do Plaintiffs' counsel and Defendants and their counsel. At this preliminary stage, Plaintiffs' counsel is unaware of any opposition to the settlement. Zouras Decl. ¶ 15. The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to object.

### 4. Competent Counsel for All Parties Endorse this Agreement (Fourth Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux*, 690 F.2d at 634 (quoting *Armstrong*, 616 F.2d at 325); *see also Isby*, 75 F.3d at 1200. Further, there is

no indication that the proposed Settlement Agreement is the result of collusion. *See Isby*, 75 F.3d at 1200.

Plaintiffs' counsel are competent and experienced in class actions, particularly wage and hour class actions of exactly this kind, and are familiar with the strengths and weaknesses of the claims and defenses. *See* Zouras Decl. ¶¶ 4-5, 14. Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Plaintiffs' counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement reached. *Id.* ¶ 14.

Defendants' counsel also agree this settlement is fair and reasonable, as evidenced by their execution of the Settlement Agreement. This factor therefore weighs in favor of preliminary approval.

### 5.     Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Fifth Factor).

This complex hybrid class and collective action was resolved almost exactly a year after it was initiated. This period involved research, analysis, investigation, the exchange of payroll records and the production of ESI in the form of over 500,000 lines of Netsmart data, among other things. *See* Zouras Decl. ¶ 6. The stage of litigation has advanced to a state that Plaintiffs' counsel could fairly and fully evaluate the value of the settlement. *Id.* at ¶ 14. Given the significant amount of time and resources spent by the Parties exchanging information and advancing settlement negotiations, this factor favors preliminary approval.

The factors all weigh in favor of issuing preliminary approval of the settlement. In the unlikely event that a substantial number of objectors come forward with meritorious objections, the Court may reevaluate its determination at the Final Approval Hearing.

**C.**     <u>**The Settlement Was the Result of Arm's Length Negotiations, Without Any**</u>
<u>**Hint of Collusion.**</u>

There is plainly no collusion or fraud with respect to this proposed settlement, which was reached after intense negotiation with the dedicated assistance and oversight of a well-respected private mediator, the Honorable Stuart Nudelman (Ret.). As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.

Newberg §11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, discovery, and analysis. Therefore, this Court should find that an initial presumption of fairness exists to support preliminary approval of the settlement.

In sum, the settlement, on its face, is fair, reasonable, and adequate, and not the product of collusion. *See Isby*, 75 F.3d at 1198, 1200. In addition, "the proposed settlement is within the range of possible approval" and should be submitted to the Class Members for their consideration. *Armstrong*, 616 F.2d at 314 (internal quotation omitted). The Court should grant preliminary approval.

**V.**     **THE CLASS NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE**

The content of the proposed Class Notice, which is attached to the Settlement Agreement in Group Exhibit B, fully complies with due process and Federal Rule of Civil Procedure 23. Under Rule 23(c)(2)(B), notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice

must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23 (c)(2)(B).

The detailed information in the proposed Class Notice far exceeds this minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Class Notice will be mailed by the Settlement Administrator to the last known address of each Class Member within ten (10) days of receiving the Class List from Defendants. Settlement Agreement ¶ 53. The Settlement Administrator must take reasonable steps to obtain the correct addresses of any Class Member whose Notice is returned as undeliverable and must attempt re-mailing. *Id.* As discussed above, the proposed Class Notice contains information about how to participate in the settlement, exclude oneself from the settlement, or object to the settlement. Settlement Agreement, Group Ex. B (Notice Materials). Class Members will have sixty (60) days from the mailing of the Class Notice to submit a Claim and Opt-In Form, opt out, or to comment on or object to the settlement. Settlement Agreement ¶¶ 37, 55-56, 59. The Class Notice further explains that, after the Settlement Agreement receives final approval and after any appeals, Class Members who timely submit Claim and Opt-In Forms will release both their state and local wage and hour claims and consent to join (*i.e.*, opt into) the FLSA collective action and thereby release their federal wage and hour claims. Settlement Agreement, Group Ex. B (Notice Materials). Finally, the Settlement Agreement explains that the Class Members who do nothing (*i.e.*, who do not request exclusion from the settlement and who also do not timely submit a Claim and Opt-In Form) will release their state and local law wage and hour claims and offset any damages that could be recovered pursuant to claims under the FLSA. *Id.*

31

## VI. PRELIMINARY APPROVAL OF PLAINTIFFS' COUNSEL'S REASONABLE FEES AND COSTS IS APPROPRIATE

In the Seventh Circuit, the favored approach to awarding reasonable attorneys' fees in class litigation is as a percentage of the common fund. *See Matter of Cont'l Ill. Secs. Litig.*, 962 F.2d 566, 572-74 (7th Cir. 1992), *later proceeding*, 985 F.2d 867 (7th Cir. 1993). To determine what percentage of the fund should be awarded, the court looks to the market price for legal services, which has traditionally ranged from $33^1/_3$% to 40% in comparable litigation. *See Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02 Civ. 1109, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004).

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method (*see Florin v. Nationsbank of Ga., N.A.*, 24 F.3d 560, 565-66 (7th Cir. 1994))—the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *5 (N.D. Ill. Dec. 23, 2016) ("Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements."); *see also Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (approving award totaling one-third of the maximum settlement payment plus costs in FLSA settlement). In fact, the Seventh Circuit has cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 763 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating "the reasonableness of a fee cannot be assessed in isolation from what it buys").[5] Further, the Supreme

---

[5] The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("the trend in this circuit is toward the percentage

Court has recognized that a percentage fee award is properly granted from the value of the total benefit that class counsel has created, and therefore necessarily includes the pool of money made available for class members. *Boeing Co. v. VanGemert*, 444 U.S. 472, 479-480 (1980) ("a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").

Accordingly, Plaintiffs' counsel requests that the Court grant preliminary approval of an award of $300,000.00, inclusive of all past and anticipated future attorneys' fees and litigation costs, which represents $33^{1}/_{3}\%$ of the Maximum Settlement Amount.

## **CONCLUSION**

While the Parties believe the settlement merits final approval, the Court need not make that determination at this time. The Court is being asked only to permit notice of the terms of the settlement to be sent to the Class and to schedule a hearing, under Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members of the fairness of the settlement, the benefits to be received by Class Members, and Plaintiffs' counsel's request for an award of attorneys' fees and expenses. *See* 5 James Wm. Moore, Moore's Federal Practice ¶ 23.80[1], at 23-36 (3d ed. 2001).

For the reasons set forth above, the Parties respectfully request that the Court grant their Motion for Preliminary Approval of Class Action Settlement and Approval of FLSA Collective Action Settlement and enter the Proposed Order, attached as Exhibit B.

Dated: December 20, 2017          Respectfully Submitted,

                                      */s/ James B. Zouras*
                                      James B. Zouras

---

method"); *see also In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund") (citing *In re Prudential*, 148 F.3d 283, 333 (3d Cir. 1998)) (internal quotation marks omitted).

Ryan F. Stephan
Teresa M. Becvar
STEPHAN ZOURAS, LLP
205 North Michigan Avenue, Suite 2560
Chicago, IL 60601
(312) 233-1550
Jzouras@stephanzouras.com
Rstephan@stephanzouras.com
Tbecvar@stephanzouras.com

**ATTORNEYS FOR PLAINTIFFS**

*/s/ Craig T. Boggs*
Craig T. Boggs
Veronica Couzo
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
(312) 324-8400
Cboggs@perkinscoie.com
Vcouzo@perkinscoie.com

**ATTORNEYS FOR DEFENDANTS**